Filed 6/19/13; part. pub. order 7/18/13 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ESPERANZA ACUNA, | D060064 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2009-00101730-CU-WT-CTL) |
| SAN DIEGO GAS & ELECTRIC CO., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Lisa Foster, Judge. Affirmed in part, and reversed in part.

North County Law Firm and Dena M. Acosta for Plaintiff and Appellant.

Wilson Turner Kosmo, Claudette G. Wilson, Michael S. Kalt and Mary P. Snyder for Defendant and Respondent.

After she was terminated, Esperanza Acuna sued her former employer, San Diego Gas & Electric Co. (SDG&E), asserting claims under the Fair Employment and Housing

Act (FEHA) (Gov. Code,[1] § 12900 et seq.), and several nonstatutory claims. The court sustained SDG&E's demurrer on Acuna's first amended complaint without leave to amend. The court found Acuna's FEHA-based claims were barred by the applicable statute of limitations and Acuna failed to sufficiently state a cause of action on her remaining claims.

Acuna appeals. We affirm the judgment on all claims, except for Acuna's causes of action for retaliation under the FEHA and for wrongful termination in violation of public policy based on the retaliation claim. SDG&E did not show these claims were untimely as a matter of law.

FACTUAL AND PROCEDURAL SUMMARY

The nature of the appellate issues require that we set forth the alleged facts in some detail. Because we are reviewing a judgment after a demurrer, we assume the truth of the properly pleaded factual allegations of Acuna's first amended complaint and the facts implied from those allegations. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

Acuna, who is Hispanic, began working for SDG&E in June 1979. Her work involved "timekeeping" responsibilities, including inputting daily time sheets into the computer system. Acuna consistently received positive performance appraisals. Her supervisors and coworkers praised her dedication and commitment to work.

---

[1] All further statutory references are to the Government Code unless otherwise specified.

2

In 2002, Jim Valentine became Acuna's supervisor. Shortly after, Valentine began making numerous "condescending" comments to Acuna about her Hispanic background, and told employees "that he did not want employees speaking Spanish around him." He also allegedly made numerous unjustified criticisms of Acuna's work.

In August 2004, Acuna's repetitive motion work "resulted in carpel tunnel to her right wrist." During an unspecified time, she was on medical leave. After treatment and ergonomic modifications were made to her work station, Acuna returned to work. After her return, Valentine "continuously and falsely" accused Acuna of making data entry errors. Valentine consistently treated Acuna differently from other employees, especially with issues of overtime and lunch periods.

In a February 2005 written evaluation, Valentine "retaliated against [Acuna] by misrepresenting [Acuna's] work performance . . . ." Valentine's comments were false and adversely affected her pay increases. Valentine also violated Acuna's right to take training classes and required that she bring her lunch so that she could eat and work at her desk.

In April 2005, Acuna suffered an emotional breakdown allegedly caused by Valentine's conduct towards her. She was placed on disability leave for an industrial stress claim. She lodged an internal discrimination and harassment claim with SDG&E's human resources department. SDG&E told Acuna an investigation would be initiated which would take about six weeks.

Three months later, on June 22, 2005, Acuna returned to work and was immediately required to meet with Valentine and two other supervisors. At the meeting,

3

Acuna was falsely accused of "errors and overtime issues" (apparently concerning her personal timekeeping record) without any supporting evidence. During the next week Acuna was "placed under constant scrutiny," and her job duties changed. Acuna "believed that [SDG&E] was retaliating against her for reporting discrimination and harassment by . . . Valentine and filing a workers' compensation claim."

About one week after she returned, on June 28, 2005, Acuna's treating physician again placed Acuna on disability based on the exacerbation of her stress issues. While on leave, on July 11, 2005, Acuna sent an email to the human resources department regarding the status of the internal investigation of her discrimination and harassment claims against Valentine. The next day, Acuna received a response that there were two separate investigations being conducted, one involving Acuna's discrimination and harassment claims, and one involving Valentine's allegations against Acuna for timekeeping irregularities. Acuna was told her required contact in human resources was Valentine's wife.

After SDG&E challenged Acuna's workers' compensation stress claim, Acuna was evaluated by a Qualified Medical Evaluator, who prepared an October 5, 2005 report concluding Acuna " 'has suffered a temporary and total industrial psychological disability as a result of an injury (stress) related to the harassment and disparagement of her by her immediate manager, Mr. Valentine.' " The evaluator opined that the only necessary work restriction was to place Acuna in a different department under a different manager. After SDG&E requested a supplemental report, the evaluator provided an additional report in January 2006, in which he concluded that Acuna's " 'major source of psychological stress

4

and her distress (more than 75%) arises from the negative treatment, amounting to harassment, by her current supervisor, Jim Valentine.' "

At that point, Acuna retained counsel. Acuna alleges she did so because she "received no response from [SDG&E] concerning her internal investigation or efforts to place her back to work in a department under a different supervisor . . . ."

Several months later, on March 16, 2006, Acuna filed an administrative complaint with the California Department of Fair Employment and Housing (DFEH). In the complaint, Acuna alleged she was "discriminated and harassed because I was an Hispanic female. Harassment increased after I filed a Worker's Compensation claim and then I was retaliated against for protesting." She requested an immediate right-to-sue letter.

About 10 days later, on March 27, the DFEH issued a right-to-sue letter, stating that the civil action must be filed within one year of the letter. However, four months later, in July 2006, Acuna's counsel and SDG&E's counsel began "a series of communications . . . concerning [SDG&E's] internal investigation of [Acuna's] complaints." In November 2006, Acuna's treating physician released her to return to work, but not under Valentine's supervision. However, SDG&E refused to allow Acuna to return to work, stating it needed additional clarification from Acuna's physician.

On January 5, 2007, SDG&E's counsel sent correspondence to Acuna's counsel stating he was arranging witness interviews and he expected to be in a position to discuss Acuna's claims in two to three weeks. However, SDG&E's counsel never sent any further communications regarding SDG&E's investigation.

5

On February 23, 2007, Acuna filed her second DFEH administrative complaint. In the complaint, Acuna alleged SDG&E engaged in disability discrimination and failed to provide reasonable accommodation for her disability. She stated that on "November 16, 2006, I provided a medical note that I could return to work with restrictions of returning to a different work site. To this date I have not been reinstated." She claimed she had applied for vacant positions that would satisfy her doctor's restrictions, but SDG&E failed to "engage [in] an interactive process" to accommodate her disability.

Immediately thereafter, SDG&E informed Acuna that it was "working on providing [Acuna] a job under the work restrictions outlined by her physician and that she would need to go back to see the qualified medical examiner before [SDG&E] could bring her back to work." SDG&E also told Acuna that John Garcia would be her human resources contact to assist her in finding a job at SDG&E. Acuna immediately began researching and applying for open SDG&E job listings.

In April 2007, another medical evaluator opined that Acuna could return to work and recommended a transfer so Acuna would have no meaningful contact with Valentine. SDG&E disputed this recommendation, and the parties agreed to Dr. Dominick Addario as an agreed medical examiner to resolve the medical dispute.

On December 14, 2007, Dr. Addario provided a report in which he opined that Acuna suffered a work-related injury predominantly caused by Acuna's exposure to harassment at work from her supervisor, Valentine. Dr. Addario recommended Acuna be accommodated in a position with a different supervisor.

6

From December 2007 through June 2008, SDG&E "refused and continued to refuse to consider [Acuna] for any position or job opening for which she was qualified . . . ."  Additionally, the SDG&E employee assigned to help her with the disability accommodation (Garcia) failed to make any reasonable efforts to assist Acuna or respond to her calls or emails.[2]

During this same period, on February 19, 2008, the DFEH issued a second right-to-sue notice based on Acuna's February 2007 DFEH complaint.  The DFEH notified Acuna that a civil action must be filed within one year of this right-to-sue notice.

Two months later, in April 2008, Acuna "became concerned about the sincerity of [SDG&E's] efforts to help her find a position after she was rejected for two positions based on Mr. Valentine's previous characterization of her work performance."  In response to her concerns, Garcia assured her that he was "continuing to assist in her job search."

In about June 2008, Acuna learned that Valentine was transferred to a different location and department.  Acuna thus requested to return to work at her former position, and she was offered and accepted the position.  At the same time, SDG&E notified Acuna that it was resuming the investigation into the timekeeping allegations made

_____

[2]     In her amended complaint, Acuna alleged that during this same time SDG&E led Acuna "to believe that it was earnest in its efforts to find her a position or job opening for which she was qualified."  However, as discussed more fully below, we disregard this allegation because it directly contradicts Acuna's earlier admissions in her original complaint.

against her by Valentine in 2005. She was told to report to manager Alan Dulgeroff to resume her former position.

However, when Acuna met with Dulgeroff and a senior human resources manager on June 16, 2008, she was "threatened" with termination based on the "revived 2005 timekeeping allegations made by . . . Valentine." She was told that she would be fired unless she signed a release of all claims against SDG&E. At the conclusion of the meeting, Acuna was handed a severance and release agreement, and told she would be terminated if she refused to sign it.

About one month later, on July 11, 2008, SDG&E sent Acuna a notice of termination effective that date. In the letter, SDG&E said Acuna was being terminated because she had engaged in wrongful conduct in 2004 and 2005 relating to reporting hours worked and overtime. Acuna denied these allegations and alleged that SDG&E "fabricated [these] issues in retaliation for protesting Defendant's unlawful conduct."

Four months later, on October 23, 2008, Acuna filed a third administrative complaint with the DFEH, alleging discrimination, harassment, and retaliation. The administrative complaint described the alleged discrimination as follows: "Previous protests and reports of discrimination, harassment and retaliation by [Valentine]. Increased harassment after filing work comp claim and previous DFEH Complaints. Failure to accommodate me and forced termination."

Based on this administrative complaint, the DFEH issued a right-to-sue notice on November 7, 2008. Less than one year later, on November 5, 2009, Acuna filed a verified complaint in superior court, alleging three FEHA claims (retaliation, disability

8

discrimination, and racial harassment), wrongful termination in violation of public policy, and several nonstatutory claims (fraud, breach of contract, and breach of the implied covenant of good faith and fair dealing). SDG&E demurred, contending the FEHA-based claims were barred by applicable statutes of limitations and the common law claims failed to state a viable cause of action. The court sustained the demurrer, with leave to amend on all claims except for the fraud claim.

Acuna then filed a verified amended complaint. On the FEHA claims, Acuna added allegations relating to the continuing violation and equitable tolling doctrines. On the contract claims, Acuna added allegations in an attempt to rebut the presumption that her employment was "at will."

After considering the new pleading and conducting a hearing, the court sustained SDG&E's demurrer without leave to amend. On the FEHA claims, the court focused primarily on Acuna's first two DFEH complaints and the right-to-sue notices received in response to these complaints, and found Acuna's lawsuit filed in November 2009 was time-barred because Acuna did not file her lawsuit within one year of *these* right-to-sue notices. The court reasoned that the continuing violation and equitable tolling doctrines did not apply to the limitations period applicable *after* an employee receives a right-to-sue notice, and that the third right-to-sue notice could not revive the claims set forth in Acuna's prior two administrative complaints because the allegations were essentially identical. On the contract claims, the court found Acuna did not allege sufficient facts to overcome the presumption of an at-will employment or provide sufficient specificity regarding the nature of the alleged contract. The court further found there was no

9

reasonable possibility Acuna could state a viable cause of action if she was permitted to amend the complaint.

DISCUSSION

I. *Standard of Review*

A demurrer tests the sufficiency of a plaintiff's complaint by raising questions of law. On appeal, we exercise our independent judgment to determine whether the complaint states a cause of action. (*City of Morgan Hill v. Bay Area Air Quality Management Dist.* (2004) 118 Cal.App.4th 861, 869.) A trial court errs in sustaining a demurrer when the plaintiff has stated a cause of action under any possible legal theory. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967.) In conducting our review, we must accept as true all properly pleaded material facts and facts that may be inferred from these allegations, but do not accept the truth of contentions, deductions or conclusions of law. (*Id.* at p. 967.) We are not bound by the trial court's stated reasons and must affirm the judgment if any ground offered in support of the demurrer was well taken. (*Walgreen Co. v. City and County of San Francisco* (2010) 185 Cal.App.4th 424, 433.)

We apply an abuse of discretion standard in reviewing the court's refusal to provide the plaintiff with leave to amend. The court abuses its discretion if there is a reasonable possibility an amendment would cure the defects. (*Schifando v. City of Los Angeles, supra*, 31 Cal.4th at p. 1081.) It is the plaintiff's burden to show how the complaint could be amended to state a viable cause of action. (*Ibid.*)

10

## II. *Acuna's FEHA Causes of Action*

Acuna alleged three FEHA causes of action:  (1) disability discrimination; (2) racial discrimination; and (3) wrongful retaliation.  She contends the court erred in concluding each of these claims was time barred.  For the reasons explained below, we conclude Acuna's racial and disability discrimination claims are barred by the applicable statute of limitations, but the court erred in sustaining the demurrer on Acuna's claim that her employment termination was motivated by improper retaliation.

### A.  *FEHA Statute of Limitations*

FEHA claims are governed by two statutory deadlines:  section 12960 and section 12965.

### 1.  *Section 12960*

Section 12960 provides that an employee bringing an FEHA claim must exhaust the administrative remedy by filing an administrative complaint with the DFEH within one year after the alleged unlawful action occurred.  (§ 12960, subd. (d).)  This code section states that with certain exceptions not applicable here:  "No [administrative] complaint may be filed after the expiration of one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred . . . ."  (*Ibid.*; see *Okoli v. Lockheed Technical Operations Co.* (1995) 36 Cal.App.4th 1607, 1613.)

This one-year period is subject to equitable tolling under various doctrines.  Of relevance here, the California Supreme Court has held the continuing violations doctrine may toll the section 12960 accrual period if the employer engaged in a series of continuing and related FEHA violations and at least one of those violations occurred

11

within the one-year period. (*Richards v. CH2M Hill*, *Inc*. (2001) 26 Cal.4th 798, 811-824 (*Richards*).) In *Richards*, a disabled employee asked for accommodation over a five-year period, and was given "mixed signals on her accommodation requests throughout the period." (*Id.* at p. 824.) The employer argued the limitations period was triggered the first time the employer refused to accommodate the employee's disability and because the employee did not file her DFEH claim at this time, the claim was barred for any employer actions occurring more than one year before she filed the DFEH complaint. (*Id.* at p. 811.) The California Supreme Court rejected this argument, emphasizing the importance of protecting employee rights and the fact that reasonable accommodation is frequently a process rather than a discrete event. (*Id.* at pp. 819-824.) After considering these policies and reviewing the various approaches to the continuing violations theory, the *Richards* court interpreted section 12960 to mean that when a continuing pattern of wrongful conduct occurs partly in the statutory period and partly outside the statutory period, the limitations period begins to accrue once an employee is on notice of the violation of his or her rights *and* on notice that "litigation, not informal conciliation, is the only alternative for the vindication of his or her rights." (*Id.* at p. 823.)

Specifically, the *Richards* court held the limitations period for filing a DFEH complaint is tolled if an employer engages in repetitive violations of an employee's FEHA rights and the employer's actions were: "(1) sufficiently similar in kind . . . ; (2) have occurred with reasonable frequency; (3) and have not acquired a degree of permanence." (*Richards, supra*, 26 Cal.4th at p. 823.) The court stated that " 'permanence' in the context of an ongoing process of accommodation of disability, or

12

ongoing disability harassment, . . . mean[s] . . . that an employer's statements and actions make clear to a reasonable employee that any further efforts at informal conciliation to obtain reasonable accommodation or end harassment will be futile." (*Ibid.*) Several years later, the high court extended the continuing violations doctrine to FEHA claims alleging a retaliatory course of conduct. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1056.)

### 2. *Section 12965*

Section 12965 concerns a separate statutory deadline applicable *after* the DFEH issues a right-to-sue notice. The code section provides that after an employee files a complaint and the DFEH does not issue an accusation within a specified period, the DFEH must issue a right-to-sue letter notifying the employee that he or she may bring a civil suit within one year of the date of the notice. (§ 12965, subd. (b); *Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 671, fn. 1.) This code section establishes a strict "one-year statute of limitations, commencing from the date of the right-to-sue notice by the [DFEH]," except for certain statutory exceptions. (§ 12965, subd. (d).) Section 12965's one-year deadline from the right-to-sue notice is "a condition on a substantive right rather than a procedural limitation period for commencement of an action." (*Williams v. Pacific Mutual Life Ins. Co.* (1986) 186 Cal.App.3d 941, 949.) Thus, it " 'cause[s] the right which previously arose and on which a suit could have been maintained, to *expire*.' " (*Ibid.*)

B.  *Summary of Important Dates Regarding Limitations Analysis*

Before analyzing these two limitations periods in the context of the alleged facts, it is helpful to restate certain dates important to our analysis.

On **March 16, 2006**, Acuna filed her first DFEH complaint, alleging racial discrimination and harassment, and retaliation for having filed a worker's compensation claim.  On **March 27, 2006**, the DFEH issued a right to sue notice on this first DFEH complaint.

On **February 23, 2007**, Acuna filed her second DFEH complaint, alleging disability discrimination (failure to accommodate her claimed disability).  On **February 19, 2008**, the DFEH filed a right-to-sue notice on this second DFEH complaint.

On **July 11, 2008,** SDG&E terminated Acuna's employment.

On **October 23, 2008**, Acuna filed her third DFEH administrative complaint, alleging various wrongful acts, including her alleged retaliatory termination.  On **November 7, 2008**, the DFEH issued a right-to-sue letter based on this third DFEH complaint.

On **November 5, 2009**, Acuna filed her lawsuit.

C.  *Analysis*

Acuna's appellate contention focuses on her final right-to-sue notice, dated November 7, 2008.  She argues that her lawsuit was timely because:  (1) her lawsuit was filed within one year of *this* November 7, 2008 notice; and (2) to the extent her current claims are based on FEHA violations occurring more than one year before she filed her

14

October 2008 administrative claim, the time period was tolled by the continuing violations and equitable tolling doctrines.

We examine these arguments with respect to each of Acuna's FEHA claims: (1) disability discrimination; (2) racial discrimination; and (3) retaliation.

### 1. *Disability Discrimination Claim*

On her disability discrimination claim, Acuna alleged she had a mental health disability relating to stress and depression and that SDG&E repeatedly denied her requested accommodations for this disability (in the form of a job position with a supervisor other than Valentine). Acuna acknowledges that her October 2008 administrative claim was filed more than one year after SDG&E engaged in this alleged disability discrimination, but argues that the time period for filing her administrative claim was tolled under the continuing violations doctrine. This argument is without merit.

As discussed above, in California the continuing violations doctrine applies to toll section 12960's one-year period for filing a DFEH claim during the time the employee and employer are engaged in informal efforts to resolve the employer's claimed wrongful conduct. (*Richards, supra*, 26 Cal.4th at pp. 822-823.) The California Supreme Court held this tolling period ends when the employer's determination achieves a level of permanence, i.e., when a reasonable employee would understand that "further efforts to end the unlawful conduct will be in vain." (*Id.* at p. 823.)

Acuna's allegations establish that a reasonable person would have understood that SDG&E had denied her requests for accommodation no later than February 2007.

15

According to Acuna's allegations, beginning in late 2005, SDG&E repeatedly declined to permit Acuna to return to her job and refused to permit her to work for a supervisor other than Valentine.  In response to this conduct, Acuna retained counsel and filed a DFEH complaint.  After SDG&E continued to refuse to accommodate her claimed disability, Acuna filed her second DFEH complaint in February 2007.  In this complaint, Acuna specifically alleged that SDG&E was refusing to accommodate her disability.  By retaining counsel and filing a DFEH complaint, Acuna manifested an understanding that further attempts at informal, rather than formal, resolution of the disability accommodation process would not be successful and were futile.  Under these circumstances, the continuing violations doctrine is inapplicable.  Because Acuna did not file her lawsuit within one year of receiving the second right-to-sue notice, her disability discrimination claim is time-barred.

In this regard, this case is similar to *Cucuzza v. City of Santa Clara* (2002) 104 Cal.App.4th 1031 (*Cucuzza*).  In *Cucuzza*, the court held the employer's alleged sexual discrimination reached a state of permanence after the plaintiff's supervisor repeatedly refused to respond to her requests to be permitted to work in a particular job and the plaintiff's internal grievances challenging these decisions were unsuccessful.  (*Id.* at pp. 1035-1037, 1042-1043.)  The *Cucuzza* court held that at that point the plaintiff "should have known that further efforts to resolve the situation would be futile."  (*Id.* at p. 1043.)  Similarly here, when SDG&E repeatedly and consistently refused to find a job position for Acuna with a new supervisor and Acuna retained counsel and filed a formal

16

administrative claim challenging this refusal, she should have known further efforts to resolve the alleged disability discrimination would be futile.

Acuna contends SDG&E's actions after she filed the second administrative complaint in February 2007 negated her earlier understanding that any additional informal conciliation to obtain reasonable accommodation for her disability would be futile. In her amended complaint, Acuna alleged that "[i]mmediately" after she filed her second DFEH complaint, SDG&E told her it was working on providing her a job under her work restrictions. However, Acuna also alleged that within several months, SDG&E disputed her doctor's recommendation that she return to work without any meaningful contact with Valentine. At this time she was represented by counsel and had a pending DFEH complaint regarding SDG&E's refusal to accommodate her claimed disability. Under these circumstances the employer's conduct became "permanent" under the *Richards* standard in that no reasonable employee would have believed that further efforts at informal conciliation would be successful. (See *Richards, supra*, 26 Cal.4th at pp. 823-824.)

We also reject Acuna's reliance on her allegation in her amended complaint that in December through June 2008, SDG&E "[led] the Plaintiff to believe that it was earnest in its efforts to find her a position or job opening." This allegation directly contradicts Acuna's admission in her original verified complaint that during this same time period SDG&E "refused and continued to refuse to consider Plaintiff for any position or job opening for which she was qualified" and that the assigned human resources employee "made no effort whatsoever" to assist her. These admissions defeat Acuna's claims that

17

SDG&E continued to lead her to believe it would accommodate her disability. Where a party amends a verified pleading to avoid the effect of a damaging factual allegation, a court may disregard the new inconsistent allegations. (See *Shoemaker v. Myers* (1990) 52 Cal.3d 1, 12; *Vallejo Development Co. v. Beck Development Co., Inc.* (1994) 24 Cal.App.4th 929, 946; *Blain v. Doctor's Co.* (1990) 222 Cal.App.3d 1048, 1058.)

Acuna's reliance on *Accardi v. Superior Court* (1993) 17 Cal.App.4th 341 is misplaced. In *Accardi*, the court held a claim alleging the employer engaged in a series of acts of harassment and discrimination was timely because the employer's acts showed a "deliberate pattern of discrimination . . . ." (*Id.* at p. 351.) However, the California Supreme Court later rejected *Accardi*'s broad view of the continuing violation doctrine and adopted a more balanced approach, adding the permanence factor to balance the employee's interest in working out the dispute with the employer's interest in preventing indefinite delays. (*Richards, supra*, 26 Cal.4th at pp. 816-824.) Because the *Accardi* court did not discuss or apply the permanence factor, it is unhelpful to the analysis in this case.

Acuna alternatively contends the equitable tolling doctrine provided her additional time to file her complaint. We reject this argument.

Equitable tolling allows a plaintiff who has a choice of legal remedies to pursue one remedy without simultaneously pursuing another remedy. (*McDonald v. Antelope Valley Community College District* (2008) 45 Cal.4th 88, 99-100; *California Restaurant Management Systems v. City of San Diego* (2011) 195 Cal.App.4th 1581, 1593-1594.) The doctrine relieves the plaintiff claiming employment discrimination from the hardship

of pursuing duplicate and possibly unnecessary procedures to enforce the same rights or obtain the same relief. (*Downs v. Department of Water & Power* (1997) 58 Cal.App.4th, 1093, 1100.)

The equitable tolling doctrine generally requires a showing that the plaintiff is seeking an alternate remedy in an established procedural context. (See *McDonald, supra*, 45 Cal.4th at p. 102-104; *Schifando v. City of Los Angeles, supra*, 31 Cal.4th at p. 1082.) Informal negotiations or discussions between an employer and employee do not toll a statute of limitations under the equitable tolling doctrine. (See *65 Butterfield v. Chicago Title Ins. Co.* (1999) 70 Cal.App.4th 1047, 1063.) Acuna does not allege any facts showing she was pursuing an alternate remedy that excused her from timely filing her administrative claim and/or from filing her lawsuit.

Moreover, the equitable tolling doctrine is inapplicable once the employee is on notice that his or her rights had been violated and that her alternate remedies will be unsuccessful. (*Richards, supra*, 26 Cal.4th at p. 814.) As discussed above, Acuna acknowledged that by February 2007 she understood that SDG&E was *refusing* to accommodate her disability and was not interested in informally resolving her claims.

In her reply brief, Acuna contends that after she received her second right-to-sue letter, SDG&E "actively misrepresented that it was seriously considering reinstating her to her former position in circumstances acceptable to her." However, she does not cite to any part of the complaint supporting this allegation. Moreover, to the extent she is relying on the allegation in her amended complaint that SDG&E led her to believe it was earnest in its efforts to find her a position or job opening, this allegation has no legal

19

effect because it is directly contradicted by Acuna's admission in her original verified complaint that SDG&E engaged in conduct during this same time period making clear to her (and to any reasonable person) that it was unwilling to make any accommodations regarding her claimed disability. (See *Blain v. Doctor's Co., supra*, 222 Cal.App.3d at p. 1058.)

The court properly sustained SDG&E's demurrer on Acuna's disability discrimination cause of action.

### 2. *Racial Discrimination Claim*

On her racial discrimination claim, Acuna alleged that her former supervisor Valentine engaged in a series of discriminatory actions towards her because she is Hispanic. However, these alleged actions occurred during 2005 and 2006. There is no allegation that SDG&E's later actions (regarding accommodations for her disability or retaliation for her complaints) were motivated by racial discrimination and/or that Valentine was involved in any of these decisions. Although Acuna timely alleged her racial discrimination claim regarding Valentine in her first DFEH complaint under section 12960, she did not timely file suit under section 12965 once she received her right-to-sue letter on this complaint.

Acuna cannot revive these expired claims by filing a new DFEH complaint many years after the alleged racial discrimination took place. The continuing violations doctrine is inapplicable because there was no allegation of *continuing* racial discrimination or harassment. (See *Richards, supra*, 26 Cal.4th at p. 823; *Thompson v. City of Monrovia* (2010) 186 Cal.App.4th 860, 879-880.) Likewise, the equitable tolling

20

doctrine is inapplicable because the allegations do not support that Acuna's racial discrimination claims were being considered or resolved in a separate procedural context.

### 3. *Retaliation Claim*

Acuna alleged she was terminated in July 2008. Less than four months later, in October 2008, Acuna filed her third DFEH complaint. Liberally construing this administrative complaint for purposes of our demurrer review (as we are legally obligated to do), the DFEH complaint included an assertion that Acuna was terminated in July 2008 for retaliatory reasons and she also suffered increased harassment following her two prior DFEH complaints. The DFEH issued a right-to-sue notice on this third administrative complaint on November 7, 2008. Acuna filed suit less than one year later, on November 5, 2009. Acuna's retaliation cause of action includes an allegation that her July 2008 *termination* was motivated by retaliation for her workers compensation claims, her claimed disability, and her filing of the first and second DFEH complaints.

These alleged facts satisfy both statutes of limitations applicable to FEHA claims.

First, under section 12960, Acuna timely filed the October 2008 DFEH complaint within one year of July 2008 when the claimed alleged unlawful employment practice occurred (termination for retaliatory reasons). The California Supreme Court has held that the one-year period for filing a DFEH claim challenging a termination accrues at the time the employee is actually terminated. (*Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 493 (*Romano*).) The *Romano* court explained that because the FEHA defines an improper " 'discharge' as among the statute's unlawful employment practices," and because the FEHA provides that DFEH complaints must be filed within one year

21

from the date the "unlawful practice 'occurred,' " the limitations period for a claim alleging a termination in violation of FEHA begins to run at the time of the termination, even if the employee knew or should have known before that time that the employer was intending to terminate the employment for the alleged improper reasons. (*Id.* at p. 497.) The *Romano* court emphasized that because a termination date is within the employer's control, the employer is able to secure or retain evidence if a claim should arise. (*Id.* at p. 500.)

Under these principles, Acuna's third DFEH complaint alleging retaliatory termination was timely under section 12960 because she filed the claim less than four months after the termination. SDG&E, not Acuna, selected the termination date and was in control of the trigger date for the accrual period. At that time, SDG&E was on notice that it should secure and retain all evidence regarding the reasons for the termination.

In its appellate brief, SDG&E argues that Acuna's retaliation claim was untimely under section 12960 because the alleged retaliatory motives for the termination arose from events in 2005 and 2006 and thus she should have filed the administrative claim within one year of those dates. However, the one-year statutory deadline set forth in section 12960 is triggered by an "unlawful practice," not the time at which the underlying motives for that practice arose. The alleged unlawful practice was the July 2008 termination of Acuna's employment because of alleged retaliation for Acuna's prior actions, including her filing the second DFEH complaint. As our Supreme Court has held, the section 12960 cause of action accrues and the statute of limitations runs from the time of *actual termination.* (*Romano, supra*, 14 Cal.4th at pp. 491-500.)

22

With respect to the retaliatory termination claim, Acuna also complied with the second FEHA statute of limitations (§ 12965) because she filed her lawsuit in November 2009, less than one year after the DFEH issued the right-to-sue notice arising from Acuna's third DFEH complaint. As discussed above, section 12965 requires only that the employee file his or her lawsuit within one year after the DFEH issues the applicable right-to-sue notice.

SDG&E contends that Acuna's filing of two *prior* administrative complaints rendered her retaliatory termination claim untimely under section 12965 because she did not file a lawsuit within one year of receiving a right-to-sue letter on *those* claims. However, the critical point is that Acuna filed her lawsuit within one year of the third right-to-sue notice. This notice pertained to Acuna's third DFEH complaint alleging conduct that occurred *after* the first two DFEH complaints were filed and after she received the first two right-to-sue notices. SDG&E does not cite any authority showing that Acuna was *required* to anticipate the termination and file her DFEH complaint years before she was terminated. As set forth above, if SDG&E had wanted to advance the accrual date, it could have terminated her years earlier because its proffered reasons for the termination allegedly occurred in 2004 and 2005.

Because Acuna filed her retaliation claim with the DFEH in October 2008, she was entitled to recover for actionable retaliation that occurred from October 2007 onward, regardless whether SDG&E's prior wrongful acts were independently actionable and timely alleged. In other words, the fact that SDG&E may have engaged in various wrongful acts that are not independently actionable because the claims challenging those

23

acts were untimely filed, does not mean the alleged wrongful acts that were allegedly committed during the limitations period cannot form the basis of a timely cause of action. SDG&E appears to acknowledge this conclusion in its respondent's brief as one of its subheadings in its appellate brief reads: "Plaintiff's First Cause of Action for FEHA Retaliation is Time-Barred to the Extent it Relies on any Conduct *Other Than Her Termination in 2008*." (Underlining omitted; italics added.)

Because Acuna's FEHA retaliation claim is based on SDG&E's conduct in terminating her for alleged retaliatory motives in July 2008, we cannot conclude at the pleadings stage that this cause of action is time-barred.[3]

### III. *Wrongful Termination in Violation of Public Policy*

Acuna contends the court erred in concluding her claim for wrongful termination in violation of public policy was untimely.

Acuna's wrongful termination claim includes allegations that SDG&E engaged in unlawful retaliation prohibited by the FEHA. "[W]hen a plaintiff relies upon a statutory prohibition to support a common law cause of action for wrongful termination in violation of public policy, the common law claim is subject to statutory limitations affecting the nature and scope of the statutory prohibition. . . ." (*Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 904.) "In other words, the viability of [the] plaintiff's tort

---

[3]     Because we are ruling on a demurrer, we do not consider any issues regarding the scope of evidence that may be used to prove this alleged retaliatory conduct (e.g., whether Acuna may present evidence outside the limitations period to prove her claim that retaliation was the motivating factor in her termination).

24

claim is tethered to the meaning of the FEHA."  (*Estes v. Monroe* (2004) 120 Cal.App.4th 1347, 1355; see *Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 229; see also *Romano, supra*, 14 Cal.4th at p. 503.)

We conclude the court erred in granting the demurrer on Acuna's claim for wrongful termination in violation of public policy for the same reasons we have concluded the court erred in sustaining the demurrer on the FEHA retaliation claim.  To the extent Acuna is able to prove the allegations of a timely retaliation complaint, she also may be entitled to recover on a claim for wrongful termination in violation of public policy prohibiting retaliatory terminations.

IV.  *Contract-based Causes of Action*

Acuna additionally contends the court erred in sustaining the demurrer on her contract-based causes of action.

In her original complaint, Acuna alleged breach of contract and breach of the covenant of good faith and fair dealing based on allegations that SDG&E breached "expressed and implied promises," including that Acuna "would be able to continue her employment with Defendant indefinitely so long as she carried out her duties in a proper and competent manner and promised to provide [Acuna] a . . . workplace free from improper or unlawful activity."  Acuna alleged this "employment contract was evidenced by various written documents, commendations, oral representations, the parties entire course of conduct including, [SDG&E's] written personnel policies and discipline procedures."

The court sustained SDG&E's demurrer, concluding that Acuna failed to plead sufficient facts to overcome the presumption of at-will employment and failed to make clear "whether plaintiff is pursuing a written contract, oral contract, or an implied contract." The court granted Acuna leave to amend the claims to satisfy applicable pleading requirements.

In her amended complaint, Acuna alleged she was employed under a contract that was "partly written, partly oral, and partly implied." She alleged the contract terms included, but were not limited to: (1) written personnel policies, including that she would be disciplined under SDG&E's progressive discipline policy and that she would be treated fairly and not suffer discrimination or retaliation; (2) assurances that she "had a contract of employment for so long as she performed her job in a satisfactory manner"; and (3) she was offered work on June 10, 2010 for a minimum of one year's employment.

Acuna alleged SDG&E breached this contract by: (1) terminating her after she accepted the offer of regular work on June 10, 2010; (2) failing to treat her in accordance with stated policies; (3) terminating her in breach of the promises made to her; and (4) terminating her without following SDG&E's policies and procedures. Acuna also alleged that she is ready, willing and able to perform her employment obligations.

The court sustained SDG&E's demurrer on this cause of action, finding: "These causes of action fail to plead sufficient facts to overcome the presumption of at-will employment. At best, the causes of action plead conclusions and vague and uncertain assurances, which are insufficient to overcome the presumption of at-will employment. In addition, these causes of action fail to identify the type of contract on which plaintiff

26

bases her claims for breach of contract and breach of the implied covenant. Rather, the causes of action allege various types of contracts in the causes of action. Additionally, the Exhibits attached to the first amended complaint do not create an employment contract and/or an employment for a twelve month term."

In challenging this conclusion, Acuna merely states the well-settled rule that every employment contract imposes a duty of good faith and fair dealing (see *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 683), and identifies the various ways in which an employer may breach this duty, including a failure to follow corporate policy or taking actions in bad faith. Acuna then asserts—without any elaboration or support—that she "provided sufficient information to allege there were both oral and written contracts" and to show the "essential terms and duration of said contracts."

Acuna forfeited her appellate challenge on the breach of contract cause of action because she did not cite to the appellate record in support of her assertions and failed to cite any legal authority in support of her arguments. She further failed to develop her legal argument and explain why she believes the court's ruling was incorrect. When an appellant asserts a point but fails to support it with reasoned argument and legal authority, the court may treat it as waived. (*People v. Stanley* (1995) 10 Cal.4th 764, 793.)

Further, the record shows Acuna was specifically provided the opportunity to amend the complaint to add specific facts regarding her breach of contract claim, including facts to overcome the presumption of at-will employment and to make clear whether she is pursuing a written contract, oral contract, or an implied contract.

27

However, Acuna's amended complaint fails to satisfy these requirements. The allegations do not provide factual information to overcome the presumption of at-will employment or to make clear the form of contract that she is alleging. (See Code Civ. Proc., § 430.10, subd. (g).) Thus, the court did not err in sustaining the demurrer on the breach of contract claim.

We reach the same conclusion regarding Acuna's claim for breach of the implied covenant of good faith and fair dealing. Because this bad faith cause of action is dependent on a valid breach of contract claim, the court properly sustained the demurrer on this claim. (*Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal.App.4th 798, 819-820.) "Where there is no underlying contract, there can be no duty of good faith arising from the implied covenant." (*Id.* at p. 819.)

V. *Refusal To Provide a Second Opportunity To Amend Complaint*

Acuna contends the court erred in refusing to provide her with another opportunity to amend the complaint.

An appellate court must reverse a judgment sustaining a demurrer if there is a reasonable possibility the defect can be cured by amendment. (*Schifando v. City of Los Angeles, supra*, 31 Cal.4th at p. 1081.) The plaintiff has the burden of proving a reasonable possibility of curing a defect by amendment. (*Ibid*.)

Acuna argues the court abused its discretion by failing to give her the opportunity to amend to plead "equitable estoppel, misrepresentation and unclean hands in opposition to [SDG&E's] assertion of the statute of limitations." However, she does not explain with any specificity what facts she could add to her pleading that would support any of these

28

theories.  Thus, we conclude the court did not err in refusing to provide leave to amend the complaint.

## DISPOSITION

The judgment is affirmed as to the second, third, fifth, and sixth causes of action alleged in Acuna's first amended complaint.  The judgment is reversed as to the first and fourth causes of action alleged in Acuna's first amended complaint.  The parties to bear their own costs on appeal.

HALLER, J.

WE CONCUR:


HUFFMAN, Acting P. J.


McINTYRE, J.

Filed 7/18/13

**CERTIFIED FOR PARTIAL PUBLICATION**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ESPERANZA ACUNA, | D060064 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2009-00101730-CU-WT-CTL) |
| SAN DIEGO GAS & ELECTRIC CO., | |
| Defendant and Respondent. | |

THE COURT:

The opinion filed June 19, 2013 is ordered certified for publication with the exception of parts IV. and V. of the Discussion section.

HUFFMAN, Acting P. J.

Copies to: All parties