Filed 2/27/15  McEnroe v. AT&T Mobility Services CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SARA MCENROE,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>AT&T MOBILITY SERVICES LLC et al.,<br><br>Defendants and Respondents. | A136272<br><br>(Sonoma County<br>Super. Ct. No. SCV-249116) |

Sara McEnroe sued her former employer, AT&T Mobility Services LLC (AT&T), and Farooq Syed, an AT&T assistant manager under the Fair Employment and Housing Act, for gender harassment and failure to accommodate the disability caused by the harassment.  Summary judgments were entered for defendants based on the statute of limitations.  McEnroe contends that her suit was timely filed because the running of the statute of limitations was equitably tolled for the time it took for her union to assert a grievance on her behalf against AT&T.  We hold that the grievance did not toll the statute for a sufficient period to save McEnroe's suit from being untimely, and affirm the judgment for defendants.

## I.  BACKGROUND

A.  McEnroe's Employment and Termination

In November 2007, McEnroe went to work as a sales consultant for AT&T at a retail store in Santa Rosa.  In April 2008, Farooq Syed became her supervisor. McEnroe's complaint alleges that Syed made inappropriate sexual comments to her, said that he wanted to torture her and see her buried alive, and hit her in the face with papers

he was holding in his hand. As a result of his behavior, she suffered "anxiety attacks, emotional breakdowns and inability to sleep." Despite her repeated requests, AT&T failed to reassign her or Syed to a different location, and failed to provide her a safe and hostility free work environment.

McEnroe was off work on leave under AT&T's disability benefits plan and the Family and Medical Leave Act from late September 2008 to late March 2009. She returned to work from March 31, 2009 to April 10, 2009. She was granted additional disability leave through May 17, 2009, and did not thereafter return to work. In July 2009, McEnroe's psychologist informed the claims administrator of AT&T's disability benefits plan that McEnroe could return to work " 'but not in the same work environment with this assistant manager [Syed].' " Further disability benefits were denied, and AT&T terminated McEnroe's employment in September 2009 for "job abandonment."

B. Facts Relating to the Statute of Limitations

In August 2008, McEnroe's union, the Communication Workers of America (the union) filed a grievance with AT&T over sexual harassment on her behalf. The collective bargaining agreement (CBA) between the union and AT&T provided for a three-step grievance procedure, followed by arbitration if requested by the union. The grievance was denied at step two on or before December 9, 2008. On that date, the union sent a letter to Thomas Conway, AT&T's Lead Labor Relations Manager for the California region, who was responsible for addressing McEnroe's grievance at step three. The letter requested a step-three meeting, but Conway did not receive the letter because it was sent to the wrong fax number.[1]

Under Article 7, Section 3 of the CBA, if the union was dissatisfied with the outcome of step two, it was required to appeal the grievance within 15 working days, in writing, to step three. Article 7, section 2 required that grievances be delivered by a

---

[1]The union later filed another grievance over McEnroe's termination. The termination grievance was denied at all three steps of the grievance process, and McEnroe takes the position that this grievance is "on hold" pending the outcome of this lawsuit, which does not include a cause of action for wrongful termination.

union representative to the designated company representative as provided in section 3. Article 7, section 8 provided: "Failure to submit or pursue a grievance under the conditions and within the time and manner stated in Section 2 above shall be construed to be a waiver by the employee and the union of the formal grievance." Under article 9, sections 1 and 2, the union could pursue arbitration of a rejected grievance, but only as to "matters processed through all steps of the formal grievance procedure."

On April 14, 2009, McEnroe filed claims for discrimination with the Department of Fair Employment and Housing against AT&T and Syed, stating: "I have been forced to work in the presence of an employee who has created a hostile work environment with threats of violence and threats of a sexual nature. Despite requests for accommodations, my employer has not remedied the situation, and I am unable to fulfill my employment obligations because of the situation." That same day, McEnroe was given a right-to-sue notice stating that civil actions against AT&T and Syed had to be filed within one year.

On August 12, 2009, union representative Steven Estes sent Conway an email and asked to schedule a meeting on McEnroe's grievance. Conway responded the next day: "[T]here is unfortunately a very long history of my repeated notification to your Local . . . of my correct contact information, my non-receipt of any step three grievances since late 2007, and my repeated requests for reconciliation of grievances as shown in your records. . . . [¶] Regarding this specific step 3 grievance escalation for Ms. McEnroe, I have never received it to-date. Please fax it to me ASAP to my fax number below and I will review it. [¶] I need to be very clear with you up front that, because of the potentially large number of untimely grievances currently pending in your Local which I have never received, I cannot commit to hearing it in the formal grievance process as it is likely timed out at this point. However, I am willing to meet with you at least informally to review any pending grievances you may have, review them for timeliness and see what we can do with them—including this one on behalf of Ms. McEnroe." After further messages setting a time and place for their meeting, Estes sent Conway an email on August 19 stating, "I have faxed a copy of the Sara McEnroe Step III letter and some of the other Step one notifications. I am aware that we will be discussing these outside of

3

the grievance process. Most of these are old issues and I am sure we will be able to close most of them out."

McEnroe testified in her deposition that she contacted Estes "a lot" about the status of her harassment grievance. She said Estes "just let me know of meetings that he was having with human resources, I believe with Thomas Conway, and that things were moving very slow. That there were several grievances in process, and he was doing his best to work on mine. [¶] . . . [¶] . . . He let me know about meetings that he was having, and that things weren't going anywhere; that they were stuck. There was no good; there was no bad; there was nothing, is what I was told."

On March 25, 2010, McEnroe sent Estes an email saying, "I still have not received an Email from you regarding what exactly was sent to arbitration and where we stand now. If you could please send that information over at your earliest convenience that would be greatly appreciated." On March 29, Estes replied: "Both of your grievances, Termination and the Sexual Harassment were sent on 3/12/10 to our Paramount office for final review before referring to the National. When that happens, which should be by the end of the week, I will be hand delivering them to the National to be considered for arbitration. I will contact you when I have delivered them to the National office."

On April 16, 2010, a union representative sent a letter to AT&T "formally request[ing] that the time limits to request arbitration be protected for . . . [McEnroe's sexual harassment] grievance." On April 17 and May 10, McEnroe sent Estes emails requesting updates on the status of her grievances.

On May 25, 2010, Conway sent an email reply to the Union's April 16 message, and addressed McEnroe's harassment grievance: "Steve Estes acknowledged that the grievance was not timely (literally months late) and acknowledged that our meeting on that grievance was outside of the grievance process. I don't know that it is a big deal for you as Ms. McEnroe's termination grievance was timely and is also being escalated to time protect status anyway."

On May 27, 2010, Estes sent McEnroe an email stating "I have completed all the steps at my level per the contract. The national has your grievances and will contact you

4

with a status.  I would let your attorney know that our grievance process has been completed."

On September 2, 2010, the union wrote McEnroe advising that her grievance had not been approved for arbitration and there would be "no further action on this grievance."  McEnroe declares that until she received this September 2, 2010 letter, she believed that her harassment grievance was being actively pursued.

On February 8, 2011, McEnroe filed this lawsuit alleging a cause of action against AT&T and Syed for gender harassment, and causes of action against AT&T for failure to prevent harassment and discrimination, and failure to accommodate her anxiety and panic attacks.  Later that month, the union advised AT&T that it was "withdrawing its intent to arbitrate" the harassment grievance.

AT&T and Syed moved for summary judgment on statute of limitations and other grounds.  The court granted the motions, concluding that McEnroe's claims were time-barred.  McEnroe has appealed from the ensuing judgment for defendants.

## II.  DISCUSSION

"The rules of review [of a summary judgment] are well established.  If no triable issue as to any material fact exists, the defendant is entitled to a judgment as a matter of law.  [Citations.]  In ruling on the motion, the court must view the evidence in the light most favorable to the opposing party.  [Citation.]  We review the record and the determination of the trial court de novo.  [Citations.]"  (*Shin v. Ahn* (2007) 42 Cal.4th 482, 499.)

McEnroe contends that her lawsuit was timely filed under the doctrine of equitable tolling of statutes of limitation.  "Broadly speaking, the doctrine applies ' "[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one." ' "  (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 100.)  While the first remedy is being pursued, the time to commence the second remedy is tolled if three requirements are met: " '[1] timely notice, and [2] lack of prejudice, to the defendant, and [3] reasonable and good faith conduct on the part of the plaintiff.' "  (*Id.* at p. 102.)

5

Pursuit of an internal grievance procedure with an employer pursuant to a bargaining agreement can toll the statutes of limitations for claims related to the plaintiff's employment. (*McDonald v. Antelope Valley Community College Dist., supra,* 45 Cal.4th at pp. 106–111; *Marcario v. County of Orange* (2007) 155 Cal.App.4th 397, 407–409.) "The [equitable tolling] doctrine relieves the plaintiff claiming employment discrimination from the hardship of pursuing duplicate and possibly unnecessary procedures to enforce the same rights or obtain the same relief. [Citation.] [¶] The equitable tolling doctrine generally requires a showing that the plaintiff is seeking an alternate remedy in an established procedural context. [Citations.] Informal negotiations or discussions between an employer and employee do not toll a statute of limitations under the equitable tolling doctrine. [Citation.] . . . [¶] Moreover, the equitable tolling doctrine is inapplicable once the employee is on notice that his or her rights have been violated and that her alternate remedies will be unsuccessful. [Citation.]" (*Acuna v. San Diego Gas & Electric Co.* (2013) 217 Cal.App.4th 1402, 1416–1417 (*Acuna*).)

Under Government Code section 12965, subdivision (b), McEnroe had until April, 13, 2010, within one year after receiving the right-to-sue notice, to commence this case. (*Downs v. Department of Water & Power* (1997) 58 Cal.App.4th 1093, 1099.) She did not file her complaint until February 8, 2011. Defendants argue that the statute of limitations was never tolled because the grievance ended in December 2008 when it was not advanced beyond step two, before the right-to-sue letter was issued. They also argue that any possible tolling ended at the latest on August 19, 2009, more than a year before the complaint was filed, once Estes was informed that the union had not given proper notice at step three, and acknowledged that discussion of the grievance would be "outside the grievance process."

McEnroe argues that the one-year deadline was tolled until September 2, 2010, when she was informed by the union that there would be no further action on her grievance, or at least until May 27, 2010, when Estes advised her to tell her counsel that the grievance process was completed "at my level," and that "[t]he national" now had her grievances. In either event, she submits that she acted reasonably and in good faith for

6

purposes of the equitable tolling doctrine by suing within one year after the tolling ended. She argues further that the case was "unsuitable for summary judgment" because "the evidence raised and argued by the parties permitted conflicting inferences regarding what information [she] had and when and the reasonableness of her belief that the [grievance] was still active until September 2010.

However, what McEnroe was told by her union representative is largely immaterial because knowledge of the grievance possessed by her union, as her agent in the matter, is imputed to McEnroe. This is not, as McEnroe protests, a "hypertechnical limitation" on the doctrine of equitable tolling. Rather it is a black letter principle of the law of agency. "For purposes of determining a principal's legal relations with a third party, notice of a fact that an agent knows or has reason to know is imputed to the principal if knowledge of the fact is material to the agent's duties to the principal . . . ." (Rest.3d Agency, § 5.03; *id*. at com. b, pp. 360 ["the agents' knowledge is imputed to the principal as a matter of basic agency law"]; 361 ["[i]mputation charges a principal with the legal consequences of having notice of a material fact, whether or not such fact would be useful and welcome"].)

The union learned on August 13, 2009, that McEnroe's grievance had not been advanced beyond step two, and acknowledged to AT&T on August 19, 2009, that further discussion of it would be "outside the grievance process." Equitable tolling of the time to sue thus ended no later than August 19, 2009, when the Union, and McEnroe through the Union's knowledge, was "on notice . . . that her alternate remed[y] [would] be unsuccessful." (*Acuna*, *supra*, 217 Cal.App.4th at p. 1417.) McEnroe therefore had until August 18, 2010, to file her complaint. Since her complaint was not filed until February 8, 2011, the suit was correctly dismissed as untimely.[2]

---

[2]In view of this conclusion, we need not reach any of the other grounds asserted by defendants for summary judgment in their favor, or pass upon the trial court's reasons for finding the case time-barred (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 346 [a correct decision is affirmed "regardless or the correctness of the grounds on which the court reached its conclusion"]).

This conclusion would not change even were we to consider McEnroe personally diligent in following up on the status of her grievance. Her case is no different from others that have been dismissed where negligence of counsel caused the untimely filing of a complaint. "Plaintiffs have cited no cases, and we have found none, holding that delay due to attorney neglect qualifies as 'reasonable and good faith conduct on the part of the plaintiff' within the meaning of the equitable tolling doctrine. [Citation.] Indeed, the opposite is true. [Citations.]" (*Bonifield v. County of Nevada* (2001) 94 Cal.App.4th 298, 306; disapproved on another ground in *City of Los Angeles v. County of Kern* (2014) 59 Cal.4th 618, 634.) McEnroe observes that her union representative is not an attorney, but that distinction is immaterial. McEnroe, not defendants, must bear the consequences of her representative's dilatory and apparently misleading advice about the grievance. (See *Gutierrez v. Mofid* (1985) 39 Cal.3d 892, 900 ["for purposes of the statute of limitations, the risk that discouraging legal advice will lead to loss of a cause of action must fall upon the plaintiff who obtains that advice, rather than upon a wholly uninvolved defendant"].) Although the union was suggesting to McEnroe in March and May of 2010 that her grievances were being referred to "national" for arbitration, no evidence has been cited that the grievances were then arbitrable at any level.

Finally, nothing that transpired after August 19, 2009, further tolled the statute of limitations. Conway's offer to Estes at that time to discuss the grievances of McEnroe and others "at least informally" to "review them for timeliness and see what we can do about them" did not toll the statute. (*Acuna*, *supra*, 217 Cal.App.4th at p. 1416 [no tolling by informal discussions between an employer and employee].) Nor was the statute tolled, under the circumstances here, by the union's belated April 16, 2010 request to AT&T to "protect[]" the "time limits" for requesting arbitration of the grievance. That request was promptly denied, and there is no evidence of a course of dealing between AT&T and the union that would have given the union any reasonable cause to believe that request would be granted. (See *Venci v. International Union of Operating Engineers, Local 18* (6th Cir. 1998) 137 F.3d 420, 426 [union breached duty of fair representation owed to member by untimely request for arbitration of grievance, and no

8

"prior course of dealing reasonably indicated that the employer would accept a late filing"]; *Dutrisac v. Caterpillar Tractor Co.* (9th Cir. 1983) 749 F.2d 1270, 1272, 1273, fn. 1 [duty of fair representation breached by untimely request for arbitration where there was no evidence that union relied on any "past practice of loose enforcement of the contractual time limits"].)

### III.  DISPOSITION

The judgment is affirmed.


_____
Siggins, J.


We concur:


_____
McGuiness, P.J.


_____
Pollak, J.