Filed 12/13/13

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| PEGGIE ANNE RYAN-LANIGAN, | C066848 |
| Plaintiff and Respondent, | (Super. Ct. No. 34-2010-80000626CUWMGDS) |
| v. | |
| BUREAU OF REAL ESTATE,[1] | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Jaime R. Roman, Judge. Affirmed.

Kamala D. Harris, Attorney General, Paul D. Gifford, Assistant Attorney General, William L. Carter and Amy J. Winn, Deputy Attorneys General, for Defendant and Appellant.

Mark S. Axup for Plaintiff and Respondent.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III. of the Discussion.

[1] The Bureau of Real Estate was formerly known as the Department of Real Estate. See Business and Professions Code sections 101a$\ell$ and 10050.

The California Bureau of Real Estate (the Bureau) revoked the real estate salesperson's license of Peggie Anne Ryan-Lanigan due to her conviction of misdemeanor hit and run (Veh. Code, § 20002, subd. (a)) on a no contest plea. Ryan-Lanigan petitioned the Sacramento Superior Court for a writ of administrative mandamus (Code Civ. Proc., § 1094.5) on the ground that, before the Bureau revoked her license, the superior court where her plea was entered (the criminal court) set aside her misdemeanor conviction nunc pro tunc, allowed her to withdraw her plea and plead to a basic speed law infraction, and dismissed the hit-and-run charge. On her petition, the trial court entered judgment in favor of Ryan-Lanigan, ordering issuance of a writ directing the Bureau to set aside its decision revoking her real estate license and remanding to the Bureau to reconsider its decision.

The Bureau appeals, arguing (1) Business and Professions Code section 10177[2] authorizes the license revocation despite the criminal court's order allowing Ryan-Lanigan to withdraw her no contest plea and setting aside the misdemeanor conviction, (2) the criminal court order is void, and (3) substantial evidence supports the Bureau's decision to revoke Ryan-Lanigan's real estate license.

---

[2] Undesignated statutory references are to the Business and Professions Code.

Section 10177 states, "The [Bureau] commissioner may suspend or revoke the license of a real estate licensee . . . who has done any of the following . . . : [¶] . . . [¶] (b) *Entered* a plea of guilty or nolo contendere to, or been found guilty of, or been convicted of, a felony, or a crime substantially related to the qualifications, functions, or duties of a real estate licensee, and the time for appeal has elapsed or the judgment of conviction has been affirmed on appeal, *irrespective of* an order granting probation following that conviction, suspending the imposition of sentence, or of *a subsequent order under Section 1203.4 of the Penal Code allowing that licensee to withdraw his or her plea of guilty and to enter a plea of not guilty, or dismissing the accusation or information.*" (Italics added.)

In the published portion of the opinion, we hold that section 10177 does not authorize the license revocation in this case because that section does not allow discipline when there has been a dismissal unless the dismissal is pursuant to Penal Code section 1203.4, i.e., an expungement. Here, the dismissal was not pursuant to Penal Code section 1203.4, and there is no other evidence supporting the Bureau's revocation of Ryan-Lanigan's real estate license. In the unpublished portion of the opinion, we conclude that the criminal court's order of dismissal is not void.

We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On November 4, 2007, shortly after 6:00 p.m., Ryan-Lanigan was driving home from her office and rear-ended a vehicle that was stopped at a stop sign. The victim and her two small children who were in the vehicle did not sustain any injuries, but the victim's vehicle sustained damage to the right rear bumper and panel. The victim said Ryan-Lanigan refused to wait for the California Highway Patrol (CHP), got back in her car, and left the scene without giving her name or address.[3]

About 7:00 p.m., CHP officers went to Ryan-Lanigan's home. A television was on and visible through the window. The officers knocked on the door and rang the doorbell repeatedly for 10 minutes, but no one answered.

The CHP report concluded, based on the damage to the victim's car and the victim's estimate that Ryan-Lanigan was traveling about 20 miles per hour at the point

---

[3] The Bureau seeks to preserve an objection for any possible remand or further appeal, that the administrative law judge (ALJ) -- whose decision the Bureau adopted -- excluded evidence that the victim told police Ryan-Lanigan smelled of alcohol and could barely stand up straight and Ryan-Lanigan had prior convictions for driving under the influence under Vehicle Code former section 23102 (now § 23152). The Bureau offers no legal analysis on this matter, and we need not consider it further. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 [appellant has burden to provide reasoned argument and citation to authority].)

3

of impact, that Ryan-Lanigan caused the collision by violating Vehicle Code section 22350, which prohibits driving at a speed which endangers the safety of persons or property.

On January 13, 2009, in criminal case No. P07CRM8922 in El Dorado County, Ryan-Lanigan pleaded no contest and was convicted of misdemeanor hit and run with property damage. (Veh. Code, § 20002, subd. (a).) The criminal court suspended imposition of sentence and placed Ryan-Lanigan on probation for 36 months, with conditions including restitution and completion of a specified number of Alcoholics Anonymous (AA) meetings.

In November 2009, a deputy real estate commissioner filed an accusation seeking disciplinary action against Ryan-Lanigan's real estate license on the ground that she was convicted of misdemeanor hit and run, which bears a substantial relationship to the qualifications, functions or duties of a real estate licensee, constituting cause for suspension or revocation of the real estate license. (§ 490,[4] § 10177, subd. (b) (fn. 2, *ante*); see Cal. Code Regs., tit. 10, § 2910 [conviction relates to license if it indicates an unlawful act with intent to obtain a financial/economic benefit].)

Ryan-Lanigan sent the Bureau a letter (unsworn) claiming she had been "hurrying home due to dizziness and diarrhea" when she rear-ended a car she thought was moving, but which was actually stopped on an incline at a newly installed stop sign. She further stated, "I made a poor judgment in leaving the accident but was so sick I did not think it

---

[4] Section 490 states a board may revoke a license "on the ground that the licensee has been convicted of a crime, if the crime is substantially related to the qualifications, functions, or duties of the business or profession for which the license was issued," and "conviction within the meaning of this section means a plea or verdict of guilty or a conviction following a plea of nolo contendere. . . ." (§ 490, subds. (a), (c).)

4

out properly before leaving." At the advice of her then attorney, she entered a *People v. West*[5] plea to avoid a "lengthy jury trial and ongoing attorney fees."

Ryan-Lanigan hired a new criminal lawyer. Ryan-Lanigan stated in her declaration in this administrative mandamus proceeding that her attorney told her he felt she had a valid motion to withdraw her plea because her former lawyer had not properly advised her of the potential professional consequences of the plea. The new attorney managed to get the criminal court to let Ryan-Lanigan withdraw her plea.

On April 19, 2010, after several court appearances and negotiations with the El Dorado County District Attorney's Office, the criminal court granted Ryan-Lanigan's "unopposed" motion to set aside her no contest plea. The criminal court also granted the People's motion to amend the complaint to allege as count II a violation of the basic speed law (Veh. Code, § 22350), an infraction. The criminal court accepted Ryan-Lanigan's no contest plea to the infraction, and the court dismissed count I, the hit and run, "in the interests of Justice."

Because counsel for the Bureau was not satisfied with the minute order reflecting the April 19, 2010 proceedings, counsel for Ryan-Lanigan prepared a more formal order, which the criminal court signed on May 18, 2010. In reciting the procedural history, this order indicated that an oral motion had been made on April 19, 2010 to set aside the conviction, "nun pro tunct [*sic*]," to the date of the entry of the plea. The court ordered: "The motion of the Defendant to set aside her previously entered plea to Count I [hit and run], is Granted without opposition. The plea is set aside *nun pro tunct* [*sic*] to the date of the entry of such plea. [¶] . . . [¶] . . . Count I [the hit and run] is dismissed in the interests of Justice."

---

[5] *People v. West* (1970) 3 Cal.3d 595.

5

On May 19, 2010, an administrative hearing was held regarding Ryan-Lanigan's real estate license. Ryan-Lanigan did not attend, but her attorney attended, said Ryan-Lanigan went on vacation, and presented a defense on her behalf. Counsel told the ALJ that he represented Ryan-Lanigan in the plea withdrawal proceedings and that the criminal court allowed the plea to be withdrawn because there was "a defect of a plea" related to "defects in representations" by counsel "in relation to her plea." He said the motion to withdraw the plea was "akin to a[n] extraordinary writ, on the basis that there was a violation of my client's constitutional rights, in that she was not advised of all of the ramifications of the plea." Counsel further represented that the district attorney's office agreed and that is why the motion was unopposed. Given the reason for the plea withdrawal, counsel said the dismissal was akin to a dismissal in the interests of justice under Penal Code section 1385 and he specifically had referenced that section in making the motion. In refuting the assertion of counsel for the Bureau that the dismissal was really a Penal Code section 1203.4[6] dismissal, which would not preclude discipline, counsel for Ryan-Lanigan further stated the court "issued language" in the minute order and in the formal order issued the day before the administrative hearing that the dismissal

---

[6] Penal Code section 1203.4 provides in part: "(a)(1) In any case in which a defendant has fulfilled the conditions of probation for the entire period of probation, or has been discharged prior to the termination of the period of probation, or in any other case in which a court, in its discretion and the interests of justice, determines that a defendant should be granted the relief available under this section, the defendant shall, at any time after the termination of the period of probation . . . be permitted by the court to withdraw his or her plea of guilty or plea of nolo contendere and enter a plea of not guilty . . . and . . . the court shall thereupon dismiss the accusations or information against the defendant and except as noted below, he or she shall thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been convicted, except as provided in Section 13555 of the Vehicle Code. . . . The order shall state . . . that the order does not relieve him or her of the obligation to disclose the conviction in response to any direct question contained in any questionnaire or application . . . for licensure by any state or local agency . . . ."

6

of the hit and run was in the "interest of justice. That is . . . language that is directly consistent with [Penal Code section] 1385, wherein the Court has the power to dismiss in the interest of justice, where they find some defective plea or some other defect."

Counsel for the Bureau asserted that the dismissal "essentially" appeared to be an attempt at a Penal Code section 1203.4 dismissal and pointed out that there was nothing in either the minute order or formal order issued the previous day that stated grounds or findings that the plea was taken in violation of Ryan-Lanigan's constitutional rights. Counsel stated that the orders did not indicate anything other than "a simple set-aside, an attempt at expungement" and nothing in the orders "contradict the finding that this is made pursuant to [section] 1203.4 of the Penal Code."

In July 2010, the ALJ issued a proposed decision to revoke Ryan-Lanigan's license. The ALJ rejected the argument of Ryan-Lanigan's lawyer that the setting aside of the conviction was akin to a Penal Code section 1385 dismissal order; the ALJ noted the criminal order did not cite that statute and did not state any reason for the dismissal, as required by that statute. The ALJ also expressed the view that "nunc pro tunc" is used only to correct a ministerial or clerical error, and therefore the "nunc pro tunc" aspect of the criminal court order was inappropriate. The ALJ also rejected the argument of Ryan-Lanigan's lawyer that the conviction could not be used because Evidence Code section 1153[7] makes a withdrawn guilty plea inadmissible; the ALJ said this was a no contest plea, not a guilty plea. As for the Bureau's assertion that the dismissal was a Penal Code section 1203.4 dismissal, the ALJ wrote, "As respondent was unsuccessful in arguing that the [hit and run] conviction was inadmissible pursuant to Penal Code

---

[7] Evidence Code section 1153 provides: "Evidence of a plea of guilty, later withdrawn, or of an offer to plead guilty to the crime charged or to any other crime, made by the defendant in a criminal action is inadmissible in any action or in any proceeding of any nature, including proceedings before agencies, commissions, boards, and tribunals."

section 1385, Evidence Code section 1153, or by inserting the language 'nunc pro tunc' in the Order," the applicability of Penal Code section 1203.4 does not need to be addressed."

The ALJ found cause for discipline based on Ryan-Lanigan having been convicted of a crime (§ 490; fn. 4, *ante*) and having entered a plea of nolo contendere to, or been convicted of a crime substantially related to a licensee's qualifications, functions, or duties (§ 10177, subd. (b); fn. 2, *ante*). The ALJ added there was no evidence that Ryan-Lanigan attended AA classes, paid restitution, or complied with the other conditions of her probation. She showed disrespect for the administrative process by failing to appear at the administrative hearing, and she offered no evidence of rehabilitation.

On July 21, 2010, the Bureau adopted the ALJ's decision and revoked Ryan-Lanigan's real estate license "on grounds of the conviction of a crime."

In August 2010, Ryan-Lanigan filed a petition for writ of administrative mandamus in the Superior Court for Sacramento County, repeating the arguments she made to the ALJ and seeking reinstatement of her license or a new administrative hearing. The trial court granted Ryan-Lanigan's request for a stay of the license revocation. In her declaration filed in the trial court, Ryan-Lanigan stated that based on conversations she had with her attorneys, she thought her administrative case would "most likely be dismissed" because there was no longer a conviction. So instead of attending the hearing, she went to Florida for a "long standing planned visit" with her sister, which "became much more important when [she] learned that [her] sister had become ill . . . ."

In October 2010, after a hearing, the trial court issued a written decision granting Ryan-Lanigan's petition for administrative mandamus. The trial court's written decision stated it was "compelled" to grant the petition despite being "disturbed by the procedural history of this case." The trial court said section 10177 (fn. 2, *ante*) authorized the Bureau to revoke the license of a real estate salesperson convicted of a crime

8

notwithstanding a subsequent order to expunge the conviction under Penal Code section 1203.4(fn. 6, *ante*) but the El Dorado County criminal court order was not an expungement under Penal Code section 1203.4 for four reasons -- (1) it was entered before termination of the probation period; (2) the order made no reference to Penal Code section 1203.4; (3) the order did not state, as required by Penal Code section 1203.4, that defendant remained obliged to disclose the conviction in licensure applications; and (4) the order did not merely dismiss the accusation and free defendant from the consequences of the conviction, but rather purported to eradicate the conviction nunc pro tunc and to substitute an entirely different conviction. The trial court also noted the criminal court order was made after judgment and therefore was not made pursuant to Penal Code section 1385.

The trial court concluded that questions about the criminal court order did not render it void, as asserted by the Bureau. The Bureau failed to show the criminal court lacked fundamental jurisdiction to hear or determine the case. The criminal court order is presumed valid. (*Hogan v. Superior Court* (1925) 74 Cal.App. 704, 708.) The Bureau failed to show any basis for collateral attack.

On November 15, 2010, the trial court entered judgment in favor of Ryan-Lanigan and issued a writ directing the Bureau to set aside its decision revoking Ryan-Lanigan's real estate license and remanding the matter to the Bureau to reconsider its decision in light of the judgment.

## DISCUSSION

### I. Standard of Review

In judicial review of administrative interpretation of statutes, "[c]ourts must . . . independently judge the text of the statute, taking into account and respecting the agency's interpretation of its meaning, of course, whether embodied in a formal rule or less formal representation. Where the meaning and legal effect of a statute is the issue, an agency's interpretation is one among several tools available to the court.

9

Depending on the context, it may be helpful, enlightening, even convincing. It may sometimes be of little worth. [Citation.] Considered alone and apart from the context and circumstances that produce them, agency interpretations are not binding or necessarily even authoritative. To quote the statement of the Law Revision Commission . . . , 'The standard for judicial review of agency interpretation of law is the *independent judgment* of the court, giving *deference* to the determination of the agency *appropriate* to the circumstances of the agency action.' (Judicial Review of Agency Action (Feb. 1997) 27 Cal. Law Revision Com. Rep. (1997) p. 81, italics added.)" (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7-8; Asimow, T*he Scope of Judicial Review of Decisions of California Administrative Agencies* (1995) 42 UCLA L.Rev. 1157, 1213-1217.)

"In reviewing a trial court's ruling on a petition for writ of mandate following an administrative decision to impose discipline on the holder of a professional license, 'an appellate court's function "is solely to decide whether credible, competent evidence supports [the trial] court's judgment." [Citation.] The trial court's legal conclusions, however, are open to [de novo] appellate review for errors of law. [Citation.]' [Citation.]" (*The Grubb Co.*, *Inc. v. Department of Real Estate* (2011) 194 Cal.App.4th 1494, 1502 (*The Grubb Co.*).)

## II. Interpretation of Section 10177

The Bureau first argues the trial court erred in interpreting section 10177, subdivision (b). (See fn. 2, *ante*.) We disagree.

Pursuant to Evidence Code section 1153 (see fn. 7, *ante*), a guilty plea, later withdrawn, is inadmissible in administrative proceedings. A no contest plea is legally equivalent to a guilty plea. (Pen. Code, § 1016, subd. 3;[8] *People v. Warburton* (1970)

---

[8] Penal Code section 1016, subdivision 3, states a plea of nolo contendere "shall be considered the same as a plea of guilty . . . . In cases other than those punishable as

10

7 Cal.App.3d 815, 820-821.)  In *Cahoon v. Governing Bd. of Ventura Unified School Dist.* (2009) 171 Cal.App.4th 381, the court held that Penal Code section 1016 (fn. 8, *ante*) bars using a nolo contendere plea to a misdemeanor against the person as an admission in a civil suit, including administrative proceedings, "absent legislative authorization."  (*Cahoon*, *supra*, at p. 384.)

The Bureau contends such legislative authorization is found in section 10177, which authorizes disciplinary action against licensees who enter pleas or are convicted "irrespective of" subsequent withdrawal of plea or dismissal.

However, section 10177 is expressly limited to subsequent plea withdrawals and dismissals made pursuant to Penal Code section 1203.4 (fn. 6, *ante*), i.e., expungements. Section 10177 says:  "The commissioner may suspend or revoke the license of a real estate licensee . . . who has . . . [¶] . . . (b) Entered a plea of guilty or nolo contendere to, or been found guilty of, or been convicted of . . . a crime substantially related to the qualifications, functions, or duties of a real estate licensee . . . *irrespective of an* order granting probation following that conviction, suspending the imposition of sentence, or of a subsequent *order under Section 1203.4 of the Penal Code allowing that licensee to withdraw his or her plea of guilty and to enter a plea of not guilty, or dismissing the accusation of information.*"  (Italics added.)

The Bureau no longer contends, as it did in the administrative hearing and trial court, that the plea withdrawal or dismissal in Ryan-Lanigan's criminal case was pursuant to Penal Code section 1203.4.  Instead, the Bureau argues the statute is ambiguous but should be interpreted so that the phrase "or dismissing the accusation or information" stands independently and is not limited to dismissals in connection

---

felonies, the plea and any admissions required by the court during any inquiry it makes as to the voluntariness of, and factual basis for, the plea may not be used against the defendant as an admission in any civil suit based upon or growing out of the act upon which the criminal prosecution is based."

11

with Penal Code section 1203.4. Thus, argues the Bureau, section 10177 identifies the following enumerated categories of modifications to convictions that do not affect the Bureau's authority to discipline based on the original conviction:

orders granting probation,

orders suspending sentence,

expungement orders under Penal Code section 1203.4, and

*other orders dismissing the accusation or information*.

The Bureau's interpretation is unreasonable, because the word "order" does not appear before the phrase "dismissing the accusation or information" but rather appears before the reference to Penal Code section 1203.4. Grammatically, the reference to dismissals refers to Penal Code section 1203.4 dismissals.

The Bureau argues the reasonable reading of the language following "irrespective of" "is that it is intended to strengthen the language of the first part of the subdivision, not impose restrictions on it." In other words, argues the Bureau, "irrespective of" should be construed as "regardless of, not as an invitation to treat the descriptive phrases that follow[] as setting out the *only* instances in which a modified conviction will not support discipline." We disagree. The statutory language is not amenable to the Bureau's interpretation. If the Legislature meant to allow license revocation based on a plea or conviction regardless of any subsequent events, then the reference to Penal Code section 1203.4 would be surplusage. We must avoid a construction that renders part of a statute surplusage. (*Elsner v. Uveges* (2004) 34 Cal.4th 915, 931.)

The Bureau argues it makes no sense for the Legislature to provide that expunged convictions pursuant to Penal Code section 1203.4 could be used as a basis for disciplinary action, but "other types of dismissals" may not. We are of the opposite view. It makes even less sense for the statute to specify Penal Code section 1203.4 if the legislative intent was to encompass all of the multiple avenues of relief available to criminal defendants, including, for example, writs of habeas corpus, writs of coram nobis,

12

pardons, and motions to vacate under Penal Code section 1473.6 (even if no longer in custody, defendants convicted in part by false testimony of government agents may move to vacate judgment). (See *People v. Kim* (2009) 45 Cal.4th 1078, 1105-1107 (*Kim*) [listing some of the host of remedies available to criminal defendants].) And it makes more sense that the Legislature intended to exclude dismissals that resulted from irregularities in the criminal proceedings, such as ineffective assistance of counsel in giving plea advice. We hold that section 10177 does not allow discipline when there has been a dismissal unless the dismissal is based on Penal Code section 1203.4.

Accordingly, we conclude section 10177 does not authorize the license revocation in this case. And the Bureau's revocation is not supported by any other evidence.

### III. Validity of the Criminal Court Order

The Bureau argues the criminal court order setting aside the conviction is "VOID ON ITS FACE AS THE CRIMINAL COURT WAS WITHOUT JURISDICTION TO ENTER IT." We disagree.

The Bureau cites authority that an act beyond the court's jurisdiction is void and may be set aside at any time. (*People v. Mendez* (1991) 234 Cal.App.3d 1773, 1781 (*Mendez*).) However, this rule refers to fundamental jurisdiction, meaning an absence of power to hear or determine the case or an absence of authority over the parties or the subject matter. (*Ibid.*) Clearly, the criminal court had fundamental jurisdiction over the crime prosecuted by the district attorney against Ryan-Lanigan, and the Bureau does not argue otherwise.

In contrast to lack of fundamental jurisdiction, "[a]n act in excess of jurisdiction is an act beyond the court's power as defined by statute or decisional rule." (*Mendez*, *supra*, 234 Cal.App.3d at p. 1781.) An act in excess of jurisdiction is valid unless set aside. (*Ibid.*) A final order of a court having fundamental jurisdiction is valid and conclusive and can be reviewed and corrected only by an established method of attack. (*Pacific Mutual Life Insurance Co. v. McConnell* (1955) 44 Cal.2d 715, 725.)

13

The Bureau fails to show grounds for it to make a collateral attack on the criminal court order. Moreover, even assuming the Bureau could attack the criminal court order, the Bureau fails to show it is invalid.

The Bureau suggests that, because the criminal court order allowing plea withdrawal and dismissing the hit and run does not seem to fit in the categories of Penal Code section 1385 or 1018, it is invalid. However, as indicated in *Kim*, *supra*, 45 Cal.4th at pp. 1105-1107, criminal defendants have multiple avenues of relief. The Bureau fails to show the criminal court order was invalid.

The Bureau argues the "nunc pro tunc" aspect of the criminal court order was improper, because the use of "nunc pro tunc" orders is limited to correcting clerical errors. However, the Bureau's cited authority, *People v. Borja* (2002) 95 Cal.App.4th 481, merely said a nunc pro tunc order is "generally" limited to correcting clerical errors. (*Id*. at pp. 485-486 [the fact that federal immigration laws changed after defendant's conviction was not a ground for altering the record of his conviction and retroactively reducing his sentence].)

Nunc pro tunc entry is an exercise of the inherent power of the court, the object being to do justice to a litigant whose rights are threatened by a delay that is not the litigant's fault. (7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 60, p. 595, and cases cited therein.) The use of nunc pro tunc orders is not limited to clerical errors. (*Ibid*.) However, there must be a good reason for the exercise of this unusual power. (*Id*. at p. 596.)

Here, the reason is uncertain, because the record of this administrative case does not include criminal court records which may have provided insight into the criminal court's reason. For example, the trial court transcript of the plea withdrawal proceedings is not part of the record. The Bureau bears the consequences of this deficient record, because it was the Bureau's burden to prove grounds for revoking the real estate license (*The Grubb Co.*, *supra*, 194 Cal.App.4th at p. 1502) and, as indicated, the criminal court

14

order setting aside the conviction and plea is presumptively valid. Consequently, we disagree with the ALJ that Ryan-Lanigan had a burden to show something more than the criminal court order itself to establish that her conviction and plea had been set aside.

Moreover, we do know that Ryan-Lanigan claimed her former lawyer did not properly advise her about the professional consequences of her criminal plea, and we know the prosecutor did not oppose Ryan-Lanigan's motion for entry of the nunc pro tunc order. Counsel represented that the prosecutor agreed Ryan-Lanigan had received ineffective assistance of counsel because she was not warned about the consequences of her plea. The Bureau fails to address the impact of these circumstances on the nunc pro tunc order.

In any event, even without the "nunc pro tunc" aspect of the criminal court order, the order setting aside the plea and conviction was issued *before* the administrative hearing and decision concerning the real estate license. Consequently, the dismissal was in place before the license revocation decision.

We affirm the trial court's grant of administrative mandamus.

## DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

                                             MURRAY        , J.

We concur:

            RAYE           , P. J.

            ROBIE           , J.