Filed 4/29/16  Nelson v. Kremer CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| KAREN NELSON, Plaintiff and Respondent, v. KENNETH KREMER, Defendant and Appellant. | A144130 (Alameda County Super. Ct. No. RG11580668) |

Defendant and cross-complainant Kenneth Kremer appeals from an order granting in large part plaintiff and cross-defendant Karen Nelson's special motion to strike his cross-claims ("anti-SLAPP" motion pursuant to Code Civ. Proc., § 425.16, subd. (b)(1)). The cross-claims at issue on appeal—extortion, wrongful use of administrative process, and abuse of process—arise from administrative and legal action Nelson pursued against Kremer after a failed real estate deal.

On appeal, we review the trial court's ruling on the special motion to strike de novo and so are not bound by the reasoning employed by the lower court.  Rather, we independently examine (a) whether the cross-claims were properly subject to a special motion to strike (prong one of the anti-SLAPP analysis) and (b) if they were, whether Kremer made a sufficient evidentiary showing to establish a probability of succeeding on the merits of his cross-claims (prong two of the anti-SLAPP analysis).

We conclude the three cross-claims were subject to a special motion to strike.  We further conclude Kremer's evidentiary showing was insufficient to establish a probability

he would succeed on the merits.  We therefore affirm the order to the extent it granted Nelson's special motion to strike.

## BACKGROUND

Nelson sued Kremer over a real estate deal gone sour.  The two, both real estate brokers, had formed a limited liability company to purchase a small shopping center in Bay Point, California.  Kremer acted not only as the agent for the two as buyers, but also represented the seller.  According to Nelson, Kremer breached his fiduciary duties to her and their investment company and committed malpractice, fraud, and other violations of California law.

Three years into the litigation, and only months before the scheduled trial date, Kremer filed a verified cross-complaint, claiming Nelson unilaterally cancelled the deal out of personal spite towards him.  He alleged four cross-claims:  extortion, wrongful use of administrative proceedings, abuse of process, and defamation.

In his cross-claim for extortion, Kremer alleged he and Nelson met on August 27, 2011, at which time Nelson threatened to file an administrative claim with the Department of Real Estate[1] that could result in him losing his real estate license.  She allegedly said she would file a claim if Kremer pressed forward with the arbitration proceeding he had filed to enforce the shopping center sale or if he did not refund her $50,000 deposit.

In his cross-claim for wrongful use of administrative proceedings, Kremer alleged Nelson had, in fact, filed an administrative claim with the Department of Real Estate, and the claim was eventually dismissed, a result favorable to him.

---

[1] The Department of Real Estate is now known as the Bureau of Real Estate.  We refer to the department by its former name, given the timeframe relevant to this case and the parties' own usage.  (See *Ryan-Lanigan v. Bureau of Real Estate* (2013) 222 Cal.App.4th 72, 74, fn. 1.)

In his cross-claim for abuse of process, Kremer alleged Nelson maliciously included several causes of action in her complaint that were clearly subject to arbitration, sought to enjoin the ongoing arbitration, and otherwise filed motions and used discovery for improper purposes.

In his cross-claim for defamation, Kremer alleged Nelson told others, falsely, that he was mentally unstable, committed criminal acts, acted fraudulently, and misrepresented facts when acting as a real estate agent.

Nelson responded with a special motion to strike. In her moving papers, Nelson included a copy of a September 2012 formal accusation the Department of Real Estate lodged against Kremer. She also included interim and final orders, issued in 2014, from the Kremer-initiated arbitration proceedings. In these orders, Nelson was declared the prevailing party and Kremer was found to have breached his fiduciary duties as a real estate agent both to Nelson and to the parties' LLC.

In opposition to the special motion to strike, Kremer submitted a brief declaration explaining the "basis" of his claims. Though largely repetitious of his cross-complaint, it was not entirely consistent with his verified pleading.

His extortion cross-claim, he now asserted, was based on statements Nelson allegedly made on *April* 27, 2011, not August 27 as alleged in the verified cross-complaint. He characterized Nelson's asserted threat as to "take" unspecified "action" that could deprive Kremer of his real estate license, unless Kremer halted his arbitration and released her deposit. His abuse of administrative process cross-claim, he asserted, was based on Nelson following through on her threat and contacting the Department of Real Estate, which she did on June 20, 2011—a date between the two dates Kremer provided for Nelson's supposedly unlawful threat, April 27 and August 27. In response to the copy of the administrative accusation Nelson provided to the court, Kremer maintained the accusatory pleading "was not the result of any determination that there was any validity to Nelson's complaint" and attached letters showing the department,

3

after further consideration, chose to dismiss the accusation.[2]  Finally, as to his abuse of process claim, Kremer asserted Nelson wrongfully requested restraining orders and opposed arbitration in an effort to force him into bankruptcy.

The trial court granted Nelson's special motion to strike in part, striking the first three cross-claims on the ground they arose from protected speech activity and Kremer had not shown a probability of prevailing.  It denied the motion as to the cross-claim for defamation, concluding the statements at issue were not protected under the anti-SLAPP statute.

## DISCUSSION

Under California's anti-SLAPP statute, a cause of action arising from the exercise of the constitutionally protected rights to petition or engage in free speech shall be stricken unless the proponent of the cause of action shows a probability of prevailing on the claim.  (Code Civ. Proc., § 425.16, subd. (b)(1).)  We review de novo both the issue of whether a cause of action arises from protected activity (the first prong of the anti-SLAPP analysis) and whether the plaintiff or cross-claimant has shown a probability of prevailing (the second prong of the analysis).  (*South Sutter, LLC v. LJ Sutter Partners, L.P.* (2011) 193 Cal.App.4th 634, 657.)  We address each of the three stricken cross-claims in order.

### Extortion

The anti-SLAPP statute protects the right to petition before courts and administrative bodies (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 [" ' "[t]he constitutional right to petition . . . includes the basic act of filing litigation *or otherwise seeking administrative action*" ' "], italics added), and this

---

[2]  Kremer also declared his abuse of administrative process claim arose from Nelson's pursuit of relief before an organization called the Bay East Association of Realtors.  This conduct was not alleged in his cross-complaint and was not argued in the appellate briefs.  We do not mention it further.

protection extends to pre-dispute demands (*Collier v. Harris* (2015) 240 Cal.App.4th 41, 54 ["an attorney's settlement demand letter on a client's behalf generally is protected as a petition activity"]; *Malin v. Singer* (2013) 217 Cal.App.4th 1283, 1299 (*Malin*) [demand letter threatening court litigation was protected activity]; *Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 36–37 ["the spectre of litigation loomed over all communications between the parties at that time;" therefore communications were protected activity]).

However, illegal speech, including speech constituting extortion, is not protected speech and the anti-SLAPP statute cannot be wielded to strike causes of action based upon it. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 320 (*Flatley*).) Kremer, thus, contends his cross-claim for extortion was not subject to a special motion to strike at all and Nelson's motion, as to that claim, should not have survived the first prong of the anti-SLAPP analysis.

"*Flatley*, however, is a very narrow exception. It applies only 'where either the defendant concedes the illegality of its conduct or the illegality is conclusively shown by the evidence. . . .' " (*Finton Construction, Inc. v. Bidna & Keys, APLC* (2015) 238 Cal.App.4th 200, 210.) Thus, if "a factual dispute exists about the legitimacy of the defendant's conduct, it cannot be resolved within the first step but must be raised by the plaintiff in connection with the plaintiff's burden to show a probability of prevailing on the merits." (*Flatley*, *supra*, 39 Cal.4th at p. 316.) "[T]he question of whether the defendant's underlying conduct was illegal as a matter of law is preliminary, and unrelated to the second prong question of whether the plaintiff has demonstrated a probability of prevailing, and the showing required to establish conduct illegal as a matter of law—either through defendant's concession or by uncontroverted and conclusive evidence—is not the same showing as the plaintiff's second prong showing of probability of prevailing." (*Id.* at p. 320.)

Nelson has never conceded that she engaged in extortion. We therefore turn to whether Kremer's showing in opposition to the motion conclusively established extortion

as a matter of law, bearing in mind the Supreme Court's comment in *Flatley* that it found extortion as a matter of law "based on the specific and extreme circumstances" of that case. (*Flatley, supra,* 39 Cal.4th at p. 332, fn. 16.)

"Extortion is the obtaining of property from another, with his consent, . . . induced by a wrongful use of force or fear, or under color of official right." (Pen. Code, § 518.) The elements of attempted extortion (Pen. Code, § 524), which Kremer alleges, are therefore: (1) a specific intent to commit extortion, and (2) a direct but ineffectual act done towards its commission. (*Cross v. Cooper* (2011) 197 Cal.App.4th 357, 386–387.)

Only certain threats create the "fear" required for extortion and attempted extortion. These include threats to accuse the victim or a relative of a crime (Pen. Code, § 519, subd. (2)) or to "expose, or to impute to him, her, or them a . . . disgrace, or crime" (Pen. Code, § 519, subd. (3)).

In *Flatley*, the Supreme Court cautioned that "rude, aggressive, or even belligerent prelitigation negotiations, whether verbal or written, that may include threats to file a lawsuit, report criminal behavior to authorities or publicize allegations of wrongdoing" do not "necessarily constitute extortion. [Citation.] Nor is extortion committed by an employee who threatens to report the illegal conduct of his or her employer unless the employer desists from that conduct." (*Flatley, supra,* 39 Cal.4th at p. 332, fn. 16.)

Focusing on Nelson's supposed demand for return of her $50,000 deposit and assertion she would file an administrative complaint if he did not, Kremer maintains the trial court erred in ruling he failed to state a claim for extortion because he did not allege Nelson threatened to accuse him of a crime or to report him to criminal authorities. While we agree extortion or attempted extortion is not limited to threats of criminal accusations (see *Cohen v. Brown* (2009) 173 Cal.App.4th 302, 310–311, 317–318 (*Cohen*)), that does not answer the threshold issue—whether Kremer made an evidentiary showing conclusively establishing extortion as a matter of law.

6

To answer that question, we compare the record here with those in *Flatley* and *Cohen* in which the appellate courts affirmed denials of motions to strike on the ground the records established extortion as a matter of law.

In *Flatley*, there was a detailed record of sustained and egregious conduct by the defendant lawyer demanding a nine-figure settlement on threat of publicizing a supposed sexual assault, instigating a criminal investigation, and hounding Flatley around the world if the demand was not met. The demand letters, alone, consisted of a barrage of threats, highlighted in a multitude of respects to emphasize their threatening character. There were also a series of threatening telephone calls. The tenor and character of this campaign added up to only thing—extortion. (*Flatley, supra*, 39 Cal.4th at pp. 307–311.) The attorney's conduct in *Cohen* was not quite as egregious as that in *Flatley,* but it was similar, culminating in the attorney preparing a false complaint to the State Bar and signing his client's name to it, followed by a lengthy e-mail that the plaintiff would "live to regret" having a complaint filed against him, the State Bar would make the plaintiff's life "a living hell" and he should immediately sign the disputed settlement checks. (*Cohen, supra,* 173 Cal.App.4th at pp. 311, 317.)

The record here is simply not of the same weight and character. Kremer's showing consisted of his declaration reciting a single comment Nelson allegedly made at one meeting, where she complained about how he was handling the real estate deal, asserted he was breaching fiduciary duties owed to her and to their investment company (claims later determined to be true in the arbitration), wanted the return of her deposit and said she would file a complaint with the Department of Real Estate if he did not change his behavior. This does not begin to conclusively establish extortion *as a matter of law*. Furthermore, in his *verified* cross-complaint Kremer alleged Nelson made the threat to file an administrative complaint in late *August* 2011, two months after she actually lodged her complaint with the Department in June 20, 2011. Nelson's supposed threat makes no sense under this timeline. In his later declaration filed in opposition to the anti-SLAPP

7

motion, Kremer averred the threat to file an administrative complaint was made in April 2011. At best Kremer created a conflict in the evidence as to when Nelson allegedly threatened to file an administrative complaint, further militating against any conclusion that he conclusively established extortion as a matter of law. (See *Acuna v. San Diego Gas & Electric Co.* (2013) 217 Cal.App.4th 1402, 1416 [a litigant is bound by facts pleaded in a verified complaint]; *Brecher v. Gleason* (1972) 27 Cal.App.3d 496, 499, fn. 1 ["A verified assertion in a pleading is a conclusive concession of the truth of the matter pleaded."]; *Avalon Painting Co. v. Alert Lumber Co.* (1965) 234 Cal.App.2d 178, 185 [stating rule that "allegations of fact in a verified complaint which are subsequently omitted or contradicted are still binding on the complainant"]; see also *Parker v. Twentieth Century–Fox Film Corp.* (1970) 3 Cal.3d 176, 181 [in opposing summary judgment, one party may point to admissions in an opponent's pleading to show the existence of a fact issue for trial].).

We therefore proceed to prong two of the anti-SLAPP analysis—whether Kremer carried his burden of establishing a probability of prevailing on his extortion cross-claim. Our review of his evidentiary showing, measured against the probability of prevailing standard, leads us to conclude he did not carry his burden in this regard. In evaluating a plaintiff's or cross-claimant's probability of prevailing, we apply a "summary-judgment-like" test (*Taus v. Loftus* (2007) 40 Cal.4th 683, 714), accepting as true the evidence favorable to the plaintiff or cross-claimant and evaluating the defending party's evidence only to determine whether it defeats the cross-claimant's evidence as a matter of law (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 823, disapproved on other grounds in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5).

The evidence put forward at this stage, however, must be admissible. (*Bently Reserve LP v. Papaliolios* (2013) 218 Cal.App.4th 418, 425–426 (*Bentley Reserve*).) Allegations in a verified complaint or cross-complaint are widely viewed as insufficient, and certainly are insufficient, to the extent they do not reflect personal knowledge.

8

(Compare *Barker v. Fox & Associates* (2015) 240 Cal.App.4th 333, 351, and *Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1212, with *Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1289–1290 (*Salma*).)

The principal difficulty Kremer faces in showing a probability of prevailing on his extortion cross-claim is California's litigation privilege codified in Civil Code section 47, subdivision (b). Regardless of whether he may have generally averred the elements of an extortion claim, he did not rebut Nelson's privilege defense.

We recognize Nelson has not been vigorous in her assertion of the litigation privilege. However, she argued in her anti-SLAPP motion, and has also done so on appeal, that "Civil Code section 47(b)(2) precludes recovery for tortious injury resulting from publications or broadcasts made during the course of judicial or quasi-judicial proceedings." And in discussing the second prong, in particular, she argued Kremer "MUST establish that there are NO constitutional or statutory defenses that apply to protect" her conduct.

The trial court did not reach the issue of privilege as to Kremer's extortion cross-claim, but it did cite to the litigation privilege as an "important[]" ground for why, in its view, Kremer's wrongful use of administrative process and abuse of process cross-claims should be barred. Thus, it is clear the litigation privilege was in play. We do not have a transcript of the hearing on the anti-SLAPP motion. We can only assume, however, based on the briefing and ruling below, that the privilege was discussed. Moreover, without the transcript, we must make all presumptions in favor of the judgment and against appellant, who bore the burden of a providing a record that might enable reversal. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140–1141; *Ruelas v. Superior Court* (2015) 235 Cal.App.4th 374, 383.)

" 'Although originally enacted with reference to defamation [citation], the privilege is now held applicable to any communication, whether or not it amounts to a publication [citations], and all torts except malicious prosecution. [Citations.] Further, it

9

applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved. [Citations.] [¶] The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]' [Citations.] Thus, 'communications with "some relation" to judicial proceedings' are 'absolutely immune from tort liability' by the litigation privilege [citation]. It is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057–1058 (*Rusheen*).)

The privilege therefore protects even extortionate threats if the threat is made in "relation" to a pending, or genuinely contemplated, legislative, judicial, or other official proceeding. (Civ. Code, § 47, subd. (b); *People ex rel. Gallegos v. Pacific Lumber Co.* (2008) 158 Cal.App.4th 950, 958 (*Gallegos*).) It thus applies to extortionate demand letters sent in connection with legal action, whether judicial or administrative. (*Malin*, *supra*, 217 Cal.App.4th at pp. 1294, 1300, 1302; *Gallegos*, *supra*, 158 Cal.App.4th at p. 958; see also *Hagberg v. California Federal Bank FSB* (2004) 32 Cal.4th 350, 362; see also *King v. Borges* (1972) 28 Cal.App.3d 27, 30–34 [letter to then Division of Real Estate making accusation and asking for investigation absolutely privileged].)

Here, Nelson's alleged demand for the return of her deposit and threat of legal action (assuming it was made in April and not in August) was made in relation to not just a threatened administrative action, but to an administrative complaint that Nelson actually went ahead and filed. Thus, there can be no doubt Nelson genuinely contemplated administrative action, the pivotal issue as to the applicability of the privilege in the context of demands made prior to the actual institution of threatened legal recourse. (See

10

*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1251; *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1489–1490.)

Moreover, after reviewing her complaint and evidence, the department independently decided to file a formal accusation against Kremer. Although the department ultimately dismissed its accusation, it was only after further investigation—the department's letter to Nelson noted its change of position occurred after "subsequent review of the evidence" by various attorneys at the department and a decision to accept a newer attorney's "interpretation of the transaction documents," despite a contrary conclusion by the "Enforcement Manager who initially recommended filing the Accusation." Thus, there also can be no doubt that Nelson's administrative complaint was not patently devoid of merit and her allegations were of sufficient concern to trigger independent review by the Department.

In short, on this record, Kremer did not carry his burden of showing a probability of overcoming Nelsons' privilege defense and prevailing on his extortion claim. Accordingly, the trial court properly granted Nelson's special motion to strike this cross-claim.

### Wrongful Use of Administrative Proceedings

Kremer makes no prong one argument as to his cross-claim for wrongful use of administrative proceedings, and focuses solely on the second prong of the anti-SLAPP analysis. We therefore do the same. (See *Bently Reserve*, *supra*, 218 Cal.App.4th at p. 425; *Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699.)

Kremer's wrongful use of administrative proceedings claim is a variant of the familiar cause of action for malicious prosecution. "It is the general rule that a malicious prosecution action may be founded upon a proceeding before an administrative body. Section 680 of the Restatement of Torts declares: 'One who initiates or procures the initiation of civil proceedings against another before an administrative board which has power to take action adversely affecting the legally protected interests of the other, is

11

subject to liability for any special harm caused thereby, if (a) the proceedings are initiated (i) without probable cause to believe that the charge or claim on which the proceedings are based is well founded, and (ii) primarily for a purpose other than that of securing appropriate action by the board, and (b) the proceedings have terminated in favor of the person against whom they are brought." (*Hardy v. Vial* (1957) 48 Cal.2d 577, 580; see also *Kurz v. Syrus Systems, LLC* (2013) 221 Cal.App.4th 748, 759.)

While the Department of Real Estate proceedings were ultimately dismissed and, thus, terminated in Kremer's favor, Kremer's evidentiary showing falls short as to the other elements of the tort. While in his declaration Kremer conclusorily asserted Nelson filed her administrative complaint without probable cause and primarily for a purpose other than obtaining legal redress from the department, that was tantamount to repeating the allegations of his cross-claim and does not constitute evidence based on any personal knowledge supporting his allegations. (See *Salma*, *supra*, 161 Cal.App.4th at pp. 1289–1290.) Thus, it was not an evidentiary showing sufficient to raise a triable issue that Nelson lacked probable cause to file an administrative complaint and filed her complaint primarily to pressure Kremer and not to obtain action from the department.

Moreover, as discussed above, other evidence in the record shows the Department of Real Estate chose to file a formal accusation after considering Nelson's claims and evidence. The department, in the end, dismissed the accusation, but only after serious discussion and a reinterpretation of evidence the initial Enforcement Manager believed was sufficient to file the accusatory pleading.[3] This demonstrates there was at least probable cause for Nelson's administrative complaint, as does the results of the arbitration, in which the arbitrator found Kremer did violate duties owed to Nelson and the investment company.

---

[3] Kremer's assertion in his declaration that the department never independently assessed Nelson's claims is not based on personal knowledge and is contrary to the letters from the department explaining why it eventually dismissed her complaint.

12

Accordingly, given Kremer's failure to make a sufficient showing on all the elements of his claim for wrongful use of administrative proceedings, the trial court also properly granted Nelson's special motion to strike this cross-claim.

***Abuse of Process***

"To succeed in an action for abuse of process, a litigant must establish that the defendant (1) contemplated an ulterior motive in using the process, and (2) committed a willful act in the use of the process not proper in the regular conduct of the proceedings." (*Rusheen, supra,* 37 Cal.4th at p. 1057.) Despite the arguable vagaries of this definition, the Supreme Court has clarified "while a defendant's act of improperly instituting or maintaining an action may, in an appropriate case, give rise to a cause of action for malicious prosecution" (a tort requiring a malicious suit without probable cause and a favorable result for the party sued), "the mere filing or maintenance of a lawsuit—even for an improper purpose—is not a proper basis for an abuse of process action." (*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1169; *S.A. v. Maiden* (2014) 229 Cal.App.4th 27, 42; see also *JSJ Limited Partnership v. Mehrban* (2012) 205 Cal.App.4th 1512, 1523 [no claim for abuse of process based on supposedly frivolous complaint filed to extort settlement]; *Contemporary Services Corp. v. Staff Pro Inc.* (2007) 152 Cal.App.4th 1043, 1059 [same].)

Kremer contends Nelson engaged in abuse of process in this lawsuit by filing several causes of action that clearly should have been asserted in the then pending arbitration, by seeking an injunction to halt the arbitration, and by employing costly litigation tactics. Again, Kremer's declaration in defense of his cross-claim was essentially a reiteration of his allegations that Nelson filed and has aggressively litigated her lawsuit, including pursuing claims that should have been arbitrated, to drive him to the brink of financial ruin. Even apart from the paucity of admissible evidence supporting his conclusory allegations, the fundamental shortcoming in Kremer's showing

is, again, that he failed to show a probability of prevailing against Nelson's litigation privilege defense.

As the Supreme Court held in *Rusheen,* the litigation privilege codified in Civil Code section 47, subdivision (b), applies to all torts, except malicious prosecution. Thus, it applies to abuse of process, and in *Rusheen* it applied to the defendant's abuse of process cross-claim based on an allegedly false declaration of service of process and ensuing wrongful postjudgment levy. (*Rusheen,* 37 Cal.4th at pp. 1057–1059.) "The purposes of section 47, subdivision (b), are to afford litigants and witnesses free access to the courts without fear of being harassed subsequently by derivative tort actions, to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, to give finality to judgments, and to avoid unending litigation[.] (*Silberg* [*v. Anderson* (1990)] 50 Cal.3d [205,] 213–214.) To effectuate these purposes, the litigation privilege is absolute and applies regardless of malice. (*Id.* at pp. 215–216.) Moreover, ' "[i]n furtherance of the public policy purposes it is designed to serve, the privilege prescribed by [Civil Code] section 47(2) has been given broad application." ' (*Id.* at p. 211.)" (*Rusheen, supra,* 37 Cal.4th at p. 1063.) The court further explained that even though this means the privilege will protect some "shady" practitioners, that is outweighed by the policies undergirding the privilege. (*Id.* at p. 1064.)

The only threshold issue as to the applicability of the privilege is that it applies to "communicative" acts, but not to "noncommunicative" acts. (*Rusheen, supra*, 37 Cal.4th at p. 1058.) However, it is well established that the filing of pleadings and advocacy before a court are communicative and therefore within the privilege. (*Ibid.*) Accordingly, the privilege plainly applies to the acts Kremer alleged as the basis for his abuse of process cross-claim.

The trial court therefore also properly granted Nelson's special motion to strike as to Kremer's cross-claim for abuse of process.

14

**DISPOSITION**

The order granting Nelson's anti-SLAPP motion in part is affirmed.  Respondent to recover costs on appeal.

_____
Banke, J.

We concur:

_____
Humes, P. J.

_____
Dondero, J.